```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
-----------------------------------------------------------------X
In re Application of DAVID NEIL GERRARD for an          Misc. Case. No.:
Order Pursuant to 28 U.S.C. § 1782 to
Obtain Discovery for Use in Foreign Proceedings from
YURI KOSHKIN and TRIDENT GROUP GLOBAL,
LLC
-----------------------------------------------------------------X
```

## PETITION PURSUANT TO 28 U.S.C. § 1782

Petitioner David Neil Gerrard, by and through his undersigned counsel, seeks the permission of this Court under 28 U.S.C. § 1782 to compel Yuri Koshkin and his company Trident Group Global, LLC ("Trident"), to produce on an expedited basis discovery in aid of proceedings in the United Kingdom (the "UK") against Gerrard.

## PRELIMINARY STATEMENT

1. Eurasian Natural Resources Corporation Limited ("ENRC") is a privately held, Kazakhstan-based, industrial mining and manufacturing company headquartered in London, UK. From 2011 to 2013, ENRC retained Dechert LLP ("Dechert"), an international law firm, and Dechert's then-partner, Petitioner David Neil Gerrard ("Gerrard"), in connection with an investigation into ENRC by the UK Serious Fraud Office ("SFO"). ENRC terminated Dechert's and Gerrard's representation in March 2013 and brought an action against them both, as well as the SFO, alleging malfeasance and misfeasance in the course of their representation of ENRC under Claim Nos: CL-2017-000583 and CL-2019-000644. In May 2022, the High Court of Justice Business and Property Courts of England and Wales Commercial Court ("High Court") entered a judgment against all three defendants, finding, as relevant here, that Gerrard had acted negligently and/or recklessly in the defense of ENRC in the SFO investigation.

2. Following that judgment in its favor, in October 2022, ENRC brought a petition in the High Court to hold Gerrard in contempt in connection with his defense of the claims brought by ENRC, alleging, among other things, that Gerrard perjured himself in those proceedings (the "Contempt Proceedings"). Gerrard opposes that petition on the basis that ENRC is not a proper party to prosecute such a contempt action and that ENRC was pursuing the contempt action for an improper purpose.

3. Other litigations in which Gerrard is named as a defendant or a counterclaim defendant are also proceeding in the UK. The first arises out of a claim brought by RAKIA against Farhad Azima which included a counterclaim brought initially against RAKIA and to which Gerrard, and others, were subsequently added as counterclaim defendants in 2021 (the "Azima Proceedings").

4. The second litigation consist of the cases filed by Mr. Karam Al Sadeq and by Jihad Quzmar against Dechert and Gerrard (and in Al Sadeq's case, against two other individuals as well). In both actions, allegations of serious breaches of Messrs Al Sadeq's and Quzmar's human rights are alleged (the "Human Rights Proceedings").

5. Another related action is a claim issued by Quzmar's counsel, the Stokoe Partnership (the "Stokoe Proceedings"). Stokoe alleges that in 2020, after Al Sadeq had issued proceedings, Gerrard/Dechert hired private investigators to access Stokoe's confidential banking and other information for the purpose of finding out who was funding those proceedings.

6. Documents and information necessary to defend Gerrard in those foreign proceedings are available in the Southern District of Florida and not otherwise available to Gerrard in the UK, necessitating this application. As described in more detail below, Koshkin and Trident have documents and information that would tend to show that ENRC has been coordinating and

funding these litigations for the purposes of obtaining revenge against Gerrard and/or of compelling him to cooperate with ENRC in its separate, and ongoing, disputes with the SFO. Such evidence would be material and relevant to Gerrard's defense in all of these proceedings, as such evidence would tend to show, in the Azima Proceedings and Human Rights Proceedings, that ENRC has violated UK law regarding champerty and maintenance, and with regards to the Contempt Proceedings, that ENRC is not a proper party to prosecute such matters and that ENRC is seeking to prosecute the contempt for an improper purpose.

## PARTIES

7. Petitioner Gerrard is a resident of the UK and a litigant in the UK proceedings in the High Court described above. Gerrard is a UK solicitor and was formerly a partner of the law firm Dechert LLP's global white-collar crime and investigation practice group.

8. Yuri Koshkin is a U.S. citizen and a former Soviet intelligence offer. Koshkin is a resident of Miami, Florida, and the founder of and manager of Miami, Florida, based consulting company Trident Group Global LLC.  He is currently a corporate consultant and investigator acting as an agent of mining conglomerate Eurasian Natural Resources Corporation ("ENRC").

9. Trident Group Global, LLC ("Trident") is a Florida LLC, headquartered in Miami, Florida.

## JURISDICTION

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 28 U.S.C. § 1782, and as each of the parties from whom discovery is sought is a resident and is found in the district.

**VENUE**

11. Venue is proper in this district as each of the parties from whom discovery is sought is a resident and found within the district.

**FACTUAL BACKGROUND**

*ENRC Matter*

12. In 2009, the United Kingdom's Serious Fraud Office (SFO) announced it was conducting a criminal investigation into allegations of bribery, corruption and fraud by ENRC, a multibillion-dollar mining business founded by three ex-Soviet oligarchs in 1994. The SFO stated that its investigation would focus on "fraud, bribery and corruption relating to the activities" of the mining conglomerate or its subsidiaries in Kazakhstan and Africa.

13. In 2011, ENRC hired Dechert LLP to conduct an internal fact-finding investigation into whistleblower allegations of bribery and financial wrongdoing at its Kazakh subsidiary. Kept on retainer with an expanding scope of work, Dechert made several presentations to the SFO on its findings until ENRC fired the firm in March 2013.

14. Communications between Gerrard and the SFO became the subject of litigation brought by the ENRC against Dechert, Gerrard, and the SFO.

15. In May 2022, the UK High Court found that Gerrard breached certain duties by making unauthorized disclosures to the SFO, leaking confidential information to the press, and acting against the interests of ENRC.

16. In October 2022, ENRC initiated contempt of court proceedings against Gerrard, claiming that Gerrard committed perjury during the ENRC trial.

17. Under relevant UK law, ENRC can only pursue the contempt proceeding with permission from the High Court. Gerrard opposes the grant of permission arguing that ENRC is

4

not a proper person to bring the application under relevant UK law and that ENRC is seeking the grant of permission for an illegitimate purpose or to advance collateral litigation.

18. The Declaration of Charles Edward Roger Fussell, solicitor-advocate for Gerrard in the UK proceedings provides details on Gerrard's opposition and is attached to the May 18, 2023, Declaration of Andrew St. Laurent ("St. Laurent Decl.") as Ex. A ("Fussell Decl.").

19. Proceedings on that application are set to start on June 20, 2023, thus necessitating the request for expedited relief.

*The Azima Proceedings*

20. Following a trial in early 2020, Farhad Azima was found liable to Ras Al Khaimah Investment Authority ("RAKIA") for fraud in the sum of $4,162,500 and his counterclaim alleging hacking was dismissed. Following several appeals, Azima received permission from the court to set aside the judgment against him on the basis that it was obtained by fraud, to revive his counterclaims and to add additional counterclaim defendants, including Gerrard. The trial has been set down for May 7, 2024, with an estimated duration of between 8 and 10 weeks. (*Id.*, ¶ 26).

*The Human Rights Proceedings*

21. In two different proceedings brought in the High Court in 2020, Karam Al Sadeq and Jihad Quzmar have made allegation of serious human rights abuse against Dechert, Gerrard, and in the case of Al Sadeq, two other individuals.  Those cases are proceeding in the High Court. As described in the attached Fussell Declaration, reasonable questions have been asked by defendants about how those litigations, which require plaintiff to post millions of pounds in security for defendants' costs, have been funded, which questions Al Sadeq and Quzmar have yet failed to answer. (*Id.*, ¶ 35).

*The Stokoe Proceedings*

22.     The third action is a claim issued by Stokoe on July 16, 2020, in claim number QB-2020-002492 for breach of confidence and conspiracy. It was originally issued against Mr. Page, Patrick Grayson, and their respective companies. Mr. Gerrrard and Dechert both were joined on September 9, 2021. Stokoe alleges that in 2020, after Mr. Al Sadeq had issued proceedings, Mr. Gerrard/Dechert hired private investigators to access Stokoe's confidential banking and other information for the purpose of finding out who was funding those proceedings. (*Id.*, ¶ 29).

23.     Similar allegations concerning the attempts to access Stokoe's confidential information are being advanced in the Human Rights Proceedings issued by Mr. Al Sadeq. (*Id.*, ¶ 30).

24.     In December 2022, further proceedings were commenced against Dechert, Gerrard and James Buchanan by Gela Mikadze and others. These proceedings also arose out of the RAKIA Investigation and included similar allegations to those being advanced in the other proceedings. (*Id.*, ¶ 31).

*Evidence Relevant to the UK High Court Proceedings Is in this District*

25.     Documents that became available on the public docket in the Middle District of North Carolina on May 12, 2023, demonstrate that information and documents relevant to Gerrard's UK proceedings may be found in this District.

26.     As described in more detail below, it appears that Koshkin and Trident, both residents of the Southern District of Florida, have aided ENRC in coordinating litigations against Gerrard for the purposes of exacting revenge against him and/or to compel him to cooperate with ENRC in its continuing disputes with the SFO. Koshkin and Trident accordingly possess evidence, in the forms of communications in which they participated and possibly other materials, that would

6

help demonstrate that ENRC is not a proper party to prosecute the contempt proceedings against Gerrard and that ENRC is seeking to prosecute the contempt proceedings for an improper purpose. It also appears Koshkin and Trident possess evidence that ENRC is funding the Azima Proceedings and at least the Human Rights Proceedings, and potentially the others, in ways that may violate UK law, and which would accordingly support relief for Gerrard in those actions.

27. The February 23, 2023, Declaration of Nicholas Del Rosso ("Del Rosso"), which was first filed in unredacted form on May 12, 2023, attaches transcripts of several conversations between Del Rosso and Koshkin, relating both to collateral litigation that ENRC has advanced in the United States and ENRC's motivation for bringing these actions against Gerrard and persons associated with him. ("Del Rosso Declaration," attached to St. Laurent Decl. as Ex. B).[1]

28. Koshkin is a manager of Trident and apparently identified himself to Del Rosso as a principal of Trident during these discussions. (Del Rosso Decl., ¶ 3).

29. The Del Rosso Declaration attaches several transcripts of conversations between Koshkin and Del Rosso (*id.* at Exh. A), as well as text message communications relating to the potential settlement of a litigation that a third party sought to bring against Del Rosso, (*id.* at Exh. C).

30. These transcripts support the inference that ENRC has:

---

[1] The Del Rosso Declaration was originally filed under seal under docket number 20-cv-954 (M.D.N.C.), with a highly redacted version being filed on the public docket. The Del Rosso Declaration was then filed in an unredacted form in a separate litigation on May 12, 2023. *See In re Application of Karam Salah Al Din Awni Al Sadeq et al.*, 21-mc-6, Docket No. 26-8 (Second Del Rosso Declaration & Exhibits) (attached as Exhibit B to the St. Laurent Decl.); Docket No. 28 at 9 (M.D.N.C. May 12, 2023) (referring to Del Rosso Declaration filed under seal)

7

  a. Improperly funded, aided, and controlled the prosecution of Azima's counterclaims against Gerrard and his former employer Dechert in the Azima Proceedings.

  b. Improperly funded, aided, and controlled the prosecution of the claims against Gerrard and his former employer Dechert in the Human Rights Proceedings.

  c. Aided these prosecutions of the claims for the purpose of effecting revenge on Gerrard and/or of pressuring Gerrard to cooperate with ENRC in its continuing dispute with SFO.

  d. Sought to prosecute the contempt in the ENRC Proceedings for the purpose of effecting revenge on Gerrard and/or of pressuring Gerrard to cooperate with ENRC in its continuing dispute with SFO.

31. These inferences are supported by the transcripts and other documents attached to the Del Rosso Declaration. In a transcript of a June 2020 conversation between Koshkin and Del Rosso, Koshkin describes to Del Rosso how in 2017, ENRC had approached Dechert to resolve the matter: if "Neil [Gerrard] came clean and explained everything that happened, then they [ENRC] would find a way to resolve this." (Exh. A to the Del Rosso Declaration at 7). However, "this didn't happen and so they [ENRC] really went after him [Gerrard]." This involved seeking out other litigations involving Gerrard: "that man [the principal of ENRC] would cooperate with anyone who was fighting with Neil [Gerrard]." (*Id.*) To that end, Koshkin said that ENRC met with Azima in 2018, saying that "they had a common interest in … cornering [Gerrard]." (*Id.*) It appears that Azima and ENRC agreed to an exchange, whereby ENRC would provide financing for Azima's litigation and Azima would provide the information it obtained about Gerrard:

8

Koshkin told Del Rosso "he [presumably Azima] was prepared to tell them everything … that he [presumably Azima] knew and share information he had to facilitate their case. So, essentially, it was money in exchange for information . . . . What he [ENRC or its agent] said we want in return is we want all the information that your client [Azima] has with regard to Neil." (*Id.* at 7-8).

32. In his conversations with Del Rosso, Koshkin discusses ENRC's ability to influence Azima's counterclaims against Dechert and Gerrard (and others) in the RAKIA High Court litigation: "So, having said all that – he [ENRC's agent] said that the – he said I believe we have leverage over Azima. Yeah, and he said that we would think we can prevent from filing an appeal and from counter-suing."[2] (*Id.*) In another filing, Del Rosso stated that Koshkin had informed "The ENRC was funding Azima's appeal in the English Proceeding because the ENRC had committed to paying the judgment [of $4.2 million that RAKIA had obtained] against him." *In re Application of Karam Salah Al Din Awni Al Sadeq et al.*, 21-mc-6, Docket No. 28 at 9 (M.D.N.C. May 12, 2023) (referring to another Del Rosso declaration still filed under seal).

33. In other communications by text, Koshkin informed Del Rosso that he would be contacted by a man named Dmitry Vozianov who would have authority to resolve Azima's anticipated case against Del Rosso and provided a copy of the draft complaint to Del Rosso to show his *bona fides*. (Del Rosso Decl., 15-20). When Del Rosso demurred, stating that only Azima's lawyers at the law firm Miller & Chevalier Ltd. had the authority to negotiate on Azima's behalf, (*id.* at 17), Koshkin reiterated that "DV" (Vozianov) had the authority to "discuss a resolution" (*id.* at 18).

---

[2] This relates to the RAKIA UK High Court litigation, which was the only litigation involving both Azima and Gerrard that had, at the time of the conversation between Del Rosso and Koshkin in June 2020, reached the appeal stage.

34. Finally, Koshkin also sheds considerable light on the apparent motives for ENRC's assistance in these apparently unrelated litigations. "[I]t came across very strongly that they're really obsessed about Neil and they are pulling out all their stops. You know, he said when he mentioned that Neil caused [presumably cost] them a billion dollars in the past 10 years, I said that's kind of steep . . . . So, anyway, I think part of it is business and money and part of it is just revenge." (Del Rosso Decl. at 7).

35. For the reasons described above, it is reasonable to believe that Koshkin and Trident have knowledge and information relating to ENRC's efforts to use litigation by third parties to effect revenge on Gerrard and/or to pressure Gerrard to assist ENRC in connection with its ongoing disputes with the SFO. As described below, this information is relevant and material to Gerrard's defense of the contempt prosecution being brought against him in the High Court. Information about ENRC's funding of and improper control over the Azima Proceedings and the Human Rights Proceedings is also relevant to Gerrard's defense of those proceedings. Accordingly, Section 1782 is available as a means to obtain discovery for use in those foreign proceedings.

*Evidence of Illegitimate Motive is Relevant to the ENRC Proceedings*

36. ENRC filed its motion to hold Gerrard in contempt in October 2022, (Fussell Decl. ¶ 37), with allegations arising under four separate headings. (*Id.* at ¶ 47). Under UK law, to bring such an application, the claimant must be a proper person to bring such proceedings in the public interest and the proceedings must not be brought for a collateral or illegitimate purpose. (*Id.* at ¶ 38).

37. In his opposition, Gerrard has alleged that ENRC is not a proper person to bring such proceedings, and that ENRC is seeking to bring such proceedings for collateral or illegitimate purposes. (*Id.*, at ¶ 8).

38. For the reasons described above, Koshkin and/or Trident are likely to possess documents and information relevant to the questions of whether ENRC is a proper person to bring such proceedings, as such evidence would tend to show both that ENRC is seeking not to vindicate a public purpose but instead to exact personal revenge on Gerrard and/or to compel him to cooperate in their litigation against the SFO.

39. Likewise, for the reasons described above, Koshkin and/or Trident are likely to possess documents and information relevant to the question of whether ENRC is pursuing contempt proceedings for a collateral or illegitimate purpose, such as revenge or using the threat of incarceration to compel him to cooperate with ENRC against the SFO so that ENRC can escape criminal prosecution in the UK.

*Evidence from this District is Relevant to Gerrard's Defense of the Azima Proceedings and the Human Rights Proceedings, the Stokoe Proceeding and the Mikadze Proceeding*

40. Koshkin and/or Trident are also likely to possess documents and information as to whether ENRC is improperly controlling, funding, or influencing the Azima Proceedings and/or the Human Rights Proceedings, the Stokoe Proceeding, and the Mikadze Proceeding in ways that violate UK law and which would give Gerrard a basis to seek relief from the High Court. As noted in the Fussell Declaration, while litigation funding agreements are permissible, and indeed common in the UK, evidence that Koshkin and Trident possess would likely show that ENRC has exceeded the permissible bounds for such litigation funding in terms of its control over the proceedings, its interest in those proceedings, and the goals it has sought to achieve through its funding of such proceedings. (*Id.* at ¶¶ 45-46).

**WHEREFORE,** Petitioner respectfully requests that this Court issue an order that:

a. Grants this application;

  b. Allows Gerrard through counsel to serve the Subpoenas to Appear and Testify at a Deposition and to Produce Documents, Information, or Objects (attached hereto as Exhibit A), on Koshkin and Trident, pursuant to 28 U.S.C. § 1782; and

  c. Grants Petitioner such other and further relief as this Court deems just and proper.

Dated: May 23, 2023

Respectfully submitted,

HARRIS ST. LAURENT & WECHSLER LLP

By: _____
Andrew St. Laurent
(*PHV Application Forthcoming*)
Evan W. Bolla
(*PHV Application Forthcoming*)
40 Wall Street, 53rd Floor
New York, New York 10005
(212) 397-3370
andrew@hs-law.com
ewbolla@hs-law.com

MARCUS NEIMAN
RASHBAUM & PINEIRO LLP

By: */s/ Jeffrey E. Marcus*
Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@mnrlawfirm.com
One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
(305) 400-4260

*Attorneys for Petitioner,
David Neil Gerrard*