UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
-------------------------------------------------------------------X
In re Application of DAVID NEIL GERRARD for an
Order Pursuant to 28 U.S.C. § 1782 to
Obtain Discovery for Use in Foreign Proceedings from
YURI KOSHKIN and TRIDENT GROUP GLOBAL
LLC
-------------------------------------------------------------------X

Misc. Case No.: 23-mc-21921-BB

# PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO QUASH SUBPOENAS BY YURI KOSHKIN AND TRIDENT GROUP GLOBAL, LLC

HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, New York 10005
(212) 397-3370

MARCUS NEIMAN RASHBAUM & PINEIRO LLP
One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
(305) 400-4260

*Attorneys for Petitioner,*
*David Neil Gerrard*

Petitioner, David Neil Gerrard ("Petitioner" or "Gerrard"), through his undersigned counsel, respectfully submits this Memorandum of Law in opposition to the motion to quash dated June 20, 2023 (Docket No. 11) filed by Yuri Koshkin ("Koshkin") and Trident Group Global, LLC ("Trident") (collectively, the "Trident Parties").

## PROCEDURAL HISTORY

Gerrard is a UK solicitor and a former partner at the law firm Dechert LLP's global white-collar practice group. Gerrard is currently a defendant in six separate proceedings in the High Court of Justice Business and Property Courts of England and Wales Commercial Court (the "High Court") in the United Kingdom.

To obtain evidence for use in those proceedings, Gerrard filed a Petition in this Court on May 23, 2023 (Docket No. 1), supported by the Declaration of Andrew St. Laurent ("St. Laurent Declaration") (Docket No. 1-1) and the exhibits thereto, including the Declaration of UK solicitor Charles Fussell (Exh. A to the St. Laurent Declaration) ("Fussell Declaration"), and a memorandum of law (Docket No. 4) ("Gerrard Moving Brief").

On May 24, 2023, the Court granted Gerrard's Petition, directed Gerrard to serve the subpoenas on the Trident Parties, and ordered that any motions to quash the subpoenas be addressed pursuant to Fed. R. Civ. P. 45. Gerrard subsequently served the subpoenas on the Trident Parties.

On June 20, 2023, the Trident Parties served their motion to quash the subpoenas. (Docket No. 11).

This brief is filed in opposition to that motion to quash.

**STATEMENT OF FACTS**

The factual background is fully set forth in the Petition, the Declarations of Charles Fussell and Andrew St. Laurent, and the Exhibits previously filed. In sum, Gerrard is a UK solicitor involved in proceedings in the UK, including an action by the European Natural Resources Council ("ENRC") before the High Court, against him and others in which ENRC seeks to hold Gerrard in contempt, *Eurasian Natural Resources Corporation v. the Director of the Serious Frauds Office, et al.*, Claim No: 2019-000644 (the "ENRC Proceedings"); and five other proceedings in the High Court (collectively, with the exclusion of the ENRC Proceedings, the "UK Proceedings") (or, as the Trident Parties style them, the "Other Proceedings").

As described in detail in the St. Laurent Declaration and Petition, in the last several weeks, audio recordings have come to light in which Koshkin, the principal of Trident, detailed ENRC's "obsession" with Gerrard and how ENRC was "pulling out all their stops" to "grab and exploit information" for use against Gerrard in the ENRC Proceedings and some or all of the UK Proceedings. *See* St. Laurent Decl., Ex. B and Petition, ¶ 29. According to Koshkin, ENRC sought out other plaintiffs with causes of action against Gerrard: "that man [the principal of ENRC] would cooperate with anyone who was fighting with Neil [Gerrard]." (*Id.*) According to Koshkin, at least one such plaintiff, Farhad Azima, took up ENRC's offer. ENRC met with Azima in 2018, saying that "they had a common interest in … cornering [Gerrard]." (*Id.*) According to Koshkin: "he [presumably Azima] was prepared to tell them everything … that he [presumably Azima] knew and share information he had to facilitate their case. So, essentially, it was money in exchange for information . . . . What he [ENRC or its agent] said we want in return is we want all the information that your client [Azima] has with regard to Neil." (*Id.*) Koshkin also said that "[t]he ENRC was funding Azima's appeal in the English Proceeding because the ENRC had committed to paying

2

the judgment [of $4.165 million that RAKIA had obtained] against him." (*Id.*) Koshkin explained ENRC's motivation: "[T]hey're [ENRC] really obsessed about Neil …. You know, he said when he mentioned that Neil caused [presumably cost] them a billion dollars in the past 10 years, I said that's kind of steep . . . . So, anyway, I think part of it is business and money and part of it is just revenge." (*Id.*, ¶ 34).

## ARGUMENT

A court may grant an applicant discovery in the United States in aid of a foreign proceeding where: (1) the person from whom discovery is sought resides or is found in the district where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by an "interested person." 28 U.S.C. § 1782.  Once the threshold statutory requirements are met, there are four factors courts consider in determining whether to exercise their discretion to order judicial assistance: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government of the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2005).

The Trident Parties do not dispute that they reside in this District; that they are subject to the personal and subject matter jurisdiction of this Court; that they have been properly served; that Gerrard is an "interested person" in the ENRC Proceedings and the UK Proceedings; and that the ENRC Proceedings and UK Proceedings are "foreign proceedings" within the contemplation of § 1782.

3

The Trident Parties argue only that Gerrard has not satisfied the statutory "for use" requirement in connection with either the ENRC Proceedings or the UK Proceedings in that Gerrard has not shown that he will be able to offer the requested materials into evidence in either proceeding. And with respect to the discretionary factors, the Trident Parties assert that the Court should deny judicial assistance because the discovery sought should come from parties in the UK (not in the US), and because it would be unduly burdensome and oppressive for the Trident Parties to respond to these subpoenas. None of these arguments has merit and the Court should deny the Trident Parties' motion to quash in its entirety.

I.     **Gerrard Has Satisfied the Statutory "For Use" Requirement**

The Trident Parties significantly overstate what is required for a petitioner under § 1782 to demonstrate that the discovery requested is "for use" in a foreign proceeding. Although the court in *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018), did hold that the petitioner must have "the practical ability to inject the requested information into the foreign proceeding," *id.* at *4, that showing is a modest one. The petitioner need not demonstrate that the foreign court will admit into evidence or otherwise consider the evidence that is sought. The petitioner need only show that there is a reasonable possibility that the discovery sought in the § 1782 petition would be of use in the foreign proceeding: "Even if the Florida LLCs are correct that the Spanish Court will ultimately decide not to consider the evidence sought, this is not fatal to the § 1782 petition because the requested discovery could conceivably be used to some advantage in the foreign proceeding." *Id.* at *5. Such discovery need not be admissible into evidence. *Id.* "[§] 1782 does not require that every document discovered be actually used in the foreign proceeding." *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009). So long as the petitioner "intends to offer

4

it in good faith and argue for its admission," that is sufficient to satisfy the "for use" requirement. *In re Bernal*, 2018 WL 6620085, at *5.

The threshold that a petitioner under § 1782 must satisfy is relevancy, not admissibility: "[§] 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the opposite. [§] 1782 expressly provides that the district court should grant discovery under the Federal Rules of Civil Procedure. Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents....' *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1272 (11th Cir. 2014) (quoting Fed. R. Civ. P. 26(b)(1)); *see also Weber*, 554 F.3d at 1384–85 (11th Cir. 2009) (same).

Gerrard has satisfied the burden of "relevance" with regards to both the ENRC Proceedings and the UK Proceedings and, thus, the "for use" requirement. As laid out in the Fussell Declaration:

> The evidence that I believe can be obtained from Mr. Koshkin and Trident is relevant to the reasons why ENRC is pursuing the contempt application. This evidence is likely to show that ENRC is pursuing the contempt application in order to obtain revenge on Mr. Gerrard and to compel him to cooperate with ENRC in its continuing disputes with the SFO. Accordingly such evidence is relevant and material to both the arguments that Mr. Gerrard has made against the contempt application, viz., that ENRC is not a proper party to pursue the contempt application and that ENRC is not pursuing the contempt application for a proper purpose.

Fussell Decl. ¶ 43. The Fussell Declaration similarly establishes the relevance of the evidence sought from the Trident Parties regarding the UK Proceedings:

> While litigation funding arrangements are to some extent permitted in the United Kingdom, they may amount to unlawful maintenance or champerty, if they involve "wanton and officious" meddling, disproportionate control or profit, or a clear tendency to corrupt justice. Certain of the recorded statements by Mr. Koshkin described

5

> in the Petition, including that ENRC has "leverage" over Azima in the Azima Proceedings, that an unrelated third party had the ability to resolve litigation brought by Azima, and that ENRC had agreed to pay the judgment against Azima in the Azima Proceedings raise the possibility that ENRC not only may be funding the Azima Proceedings, the Human Rights Proceedings and the Stokoe Proceedings but may be doing so with disproportionate control over those proceedings, for the purpose of "wanton and officious" meddling (based on its apparent animus against Mr. Gerrard), and/or with a tendency to corrupt the administration of justice. This may be relevant to Mr[.] Gerrard's defence of those proceedings.

Fussell Decl. ¶¶ 45–46. It is not disputed that Fussell is an expert in UK law, having practiced in the UK for over 25 years (*id.* at ¶ 5), and having litigated a number of high-value matters before the High Court (*id.* at ¶ 6).

As described by Fussell, evidence of ENRC's efforts to seek revenge is relevant to ENRC's fitness as a party to pursue contempt sanctions against Gerrard and to the purpose for which ENRC is seeking contempt. Evidence from the Trident Parties would show that ENRC was motivated by revenge against Gerrard, which is not a proper motive, and which renders ENRC an improper party to seek contempt.

Further, as described by Fussell, evidence of ENRC's providing funds for litigation by at least one of the plaintiffs in the UK Proceedings and thereby obtaining "leverage" over that plaintiff would be relevant to Gerrard's defense of those proceedings based on possible "wanton and officious meddling" by an unrelated third party, in violation of UK law. The Trident Parties, as reflected by the transcripts of Koshkin's statements attached to the Petition, likely have evidence that would tend to show ENRC's funding of and potential control over one or more of the UK Proceedings. The Trident Parties' assertion (Motion to Quash at 7) that Gerrard "speculates" concerning ENRC's funding and control over the UK Proceedings is belied by Koshkin's own words: Koshkin said that "[t]he ENRC was funding Azima's appeal in the English Proceeding"

6

(Petition at ¶ 32) and that, as a result, it had control over those proceedings, at least according to an agent for ENRC who Koshkin reported as saying "we have leverage over Azima. Yeah, and he said that we would think we can prevent [him] from filing an appeal and from counter-suing[,]" (*id.*).

Based on Koshkin's statements, it appears that he has information concerning ENRC's and possibly Azima's willingness to pay for information and witness statements. Such activity has already been corroborated by at least one individual who has detailed how he was offered significant sums of money to provide false statements or testimony. *See* Declaration of Vikash K. Pandey (Docket 1-1, Ex. C). Inasmuch as Koshkin has such information, this would ultimately speak to the credibility and motives of these witnesses. *See U.S. v. Levenite*, 277 F.3d 454, 460 (4th Cir. 2002) ("the testimony of a paid informant must be subjected to a higher degree of scrutiny as to both weight and credibility"). Consequently, the sought-after Koshkin/Trident documents may be used to impeach witnesses in the ENRC Proceedings and the Other Proceedings on the basis that they were paid for the testimony by the ENRC. *See United States v. Gearheart*, No. 7:23-cr-00013, 2023 WL 3808112, at *4 (W.D. Va. June 5, 2023) (impeachment evidence establishing bias or motive is permissible) (citing authority). As a result, such documents and information would be relevant to the foreign proceedings and so satisfy the "for use" requirement.

The Trident Parties argue in the alternative with regards to the ENRC Proceedings only that, even if the discovery sought is of the sort that could be "for use" in a foreign proceeding, the referral of the contempt proceedings to the UK Attorney General and a corresponding stay have rendered any § 1782 application before this Court "moot" or futile. Motion to Quash at 3–4. That is not the law, however, as a foreign court proceeding needs only to be "contemplated" to qualify under § 1782. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 747 F.3d

7

at 1269 (sufficient that petitioner "wants the evidence for use in reasonably contemplated civil collusion proceedings that it *may* file against two of its former employees" (emphasis added)). There is no question that the contempt proceedings ENRC initiated have been stayed, not dismissed. There is accordingly a reasonable possibility that such proceedings will resume, at which point the evidence sought by Gerrard may be used. Accordingly, the foreign proceedings for which the evidence is sought are sufficiently likely to occur to qualify for § 1782 assistance.

Gerrard has accordingly satisfied the mandatory factors required by § 1782 in connection with the ENRC Proceedings and the UK Proceedings. The Trident Parties' claim that the requested discovery would not be "for use" in the foreign proceedings is, as established above, unmeritorious. The requested discovery is plainly relevant to these foreign proceedings. As in *Bernal*, Gerrard has the practical ability to "inject" the requested discovery into the foreign proceedings, because he could conceivably use the discovery to defend against the proceedings and to demonstrate ENRC's improper, retaliatory motives and illegal meddling in these cases. *See In re Bernal*, 2018 WL 6620085, at *4–*5.

## II.  None of the Discretionary Factors Favors Quashing the Subpoenas

The Trident Parties argue that Gerrard has not satisfied the discretionary factors with regards to the ENRC Proceedings. Specifically, with regards to the ENRC Proceedings, the Trident Parties argue that: "(1) the contempt proceeding is now with the UK Attorney General; (2) the discovery sought should come from the parties to the UK proceedings, not from third-parties in the United States; (3) the evidence sought is hearsay evidence, and is, therefore, an attempt to avoid proof-gathering restrictions in the UK; and (4) the request is unduly burdensome to a party that has no interest or involvement in the UK." Motion to Quash at 5. None of these arguments is

persuasive. The Trident Parties make identical arguments regarding the UK Proceedings (*id.* at 8), only omitting the argument regarding the UK Attorney General.

That the "contempt proceeding is now with the UK Attorney General" does not relate to any of the discretionary factors but rather goes to the "for use" requirement. That argument is fully addressed in Section I above. As a general matter, many US courts have noted the receptivity of UK courts to documents and information obtained in § 1782 proceedings. *See, e.g.*, *In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 303 (S.D.N.Y. 2020), *adhered to on reconsideration sub nom. In re Pishevar*, No. 119MC00503JGKSDA, 2020 WL 1862586 (S.D.N.Y. Apr. 14, 2020); *In re Iraq Telecom Ltd.*, No. MC 19-175, 2023 WL 2402873, at *6 (E.D. Pa. Mar. 8, 2023); *Azima v. Handjani*, No. 21 MISC. 501 (PGG), 2022 WL 2788400, at *7 (S.D.N.Y. July 15, 2022).

That the "discovery sought should come from the parties to the UK proceedings" lacks both legal and factual support. To begin with, this factor weighs in favor of Gerrard because the Trident Parties are *not* parties to the ENRC Proceedings or the UK Proceedings or subject to those tribunals' discovery procedures—thus creating the need for assistance from a US court. Further, the Trident Parties offer no support for their assertion that the same evidence in their possession is available from a party in the UK. To the contrary, Koshkin's own statements suggest that the Trident Parties are uniquely in the possession of evidence relevant to the ENRC Proceedings and UK Proceedings. None of those parties, for example, are likely to be able to testify as to the conversations that Koshkin had with Dimitri Vozianov, ENRC's non-UK based agent, about ENRC's desire to seek revenge against Gerrard, its funding for at least one of the UK Proceedings, and its concomitant control over that proceeding. In addition, the text and the purpose of § 1782 allow parties to seek discovery through US courts for use in foreign proceedings. As noted above,

9

US courts have even noted the receptivity of UK courts to documents and information obtained in § 1782 proceedings. This is diametrically opposed to the Trident Parties' argument that parties to foreign proceedings should be limited to evidence available in that foreign country.

That the evidence sought is hearsay is also not one of the discretionary factors. In fact, as argued in Section I above, the evidence need not be admissible into evidence in the foreign proceedings to be obtained through a § 1782 petition. In any event, the Trident Parties offer absolutely no evidence or support for the proposition that the discovery sought would be inadmissible as "hearsay" in the High Court. That the evidence is being sought to avoid UK proof-gathering restrictions has no factual basis as neither of the Trident Parties is a party to any of the foreign proceedings and, as described above, there is no reason to believe that any of the evidence sought here is available in the UK. There is certainly no showing, for example, that the foreign tribunal itself opposes the § 1782 application. *See In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1305 (S.D. Fla. 2012) ("absent a persuasive showing that a [§] 1782 applicant … is actively seeking to circumvent the foreign tribunal's discovery methods and restriction … this factor does not counsel against [§] 1782 relief"). To the contrary, the only evidence before the Court on this point is the Fussell Declaration, which attests to the receptivity of UK courts to evidence obtained through § 1782 petitions. Fussell Decl. at ¶¶ 47–52. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of [§] 1782.").

Whether the request is "unduly burdensome" to a respondent is one of the discretionary factors. However, the facts do not support this argument. The Trident Parties do not argue that any of the requests in the subpoena would invade an applicable privilege or that compliance would be

10

unusually difficult or expensive. Nor could they colorably make this argument, as the subpoenas seek, at most, four categories of documents related to narrowly defined individuals and events.

Although the Trident Parties argue that the requests amount to no more than a "fishing expedition" (Motion to Quash at 6), the evidence sought by Gerrard is relevant to the ENRC Proceedings and UK Proceedings for the reasons established in Section I above.[1] Further, the Trident Parties' argument that there is no "logical" or "temporal" connection between the events involving Koshkin and the foreign proceedings is disingenuous, especially as Koshkin's statements are not at all "vague" but clearly indicate that the ENRC was funding and/or coordinating litigations against Gerrard for illegitimate purposes. *See* Gerrard Moving Brief at 2.

Finally, although Rule 45 permits a court to quash or modify a subpoena if it "subjects a person to undue burden," more than generic allegations of such burden are required. *See In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d at 1306. Instead of attempting to narrow the scope of the requests in the subpoena, the Trident Parties have taken an "all or nothing" approach that the Eleventh Circuit has described as "problematic." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 747 F.3d at 1273. Having failed to seek a narrowing of the discovery requests, and having failed to identify any particular burden on them, the Court should deny the Trident Parties' motion to quash in its entirety.

### III. Conclusion

For the foregoing reasons, the motion to quash should be denied in its entirety.

---

[1] It should be noted that the holding cited by the Trident Parties (Motion to Quash at 6) in *In re Terra Inv., LLC*, No. 21-CV-23332, 2022 WL 18662732, at *4 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted in part sub nom. Terra Inv., LLC*, No. 21-CV-23332, 2023 WL 21014 (S.D. Fla. Jan. 3, 2023) was not adopted by this Court, *id.* at *6, which affirmed solely for lack of jurisdiction, an issue not presented here.

Dated:      New York, New York
July 5, 2023

            HARRIS ST. LAURENT & WECHSLER LLP

By: /s/ Andrew St. Laurent
Andrew St. Laurent (admitted *pro hac vice*)
Evan W. Bolla (admitted *pro hac vice*)
40 Wall Street, 53rd Floor
New York, New York 10005
(212) 397-3370
andrew@hs-law.com
ewbolla@hs-law.com

            MARCUS NEIMAN RASHBAUM & PINEIRO LLP

By: /s/ Jeffrey E. Marcus
Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@mnrlawfirm.com
One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
(305) 400-4260

*Attorneys for Petitioner,
David Neil Gerrard*