UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-mc-21921-BLOOM/OTAZO-REYES

DAVID NEIL GERRARD,

    Petitioner,

v.

YURI KOSHKIN and
TRIDENT GROUP GLOBAL LLC,

    Respondents.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon Respondents Yuri Koshkin ("Koshkin") and Trident Group Global LLC's ("Trident") (together, "Respondents") Motion to Quash Subpoenas and Dismiss Proceeding (hereafter, "Motion to Quash") [D.E. 11]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 13]. The undersigned held a hearing on this matter on July 27, 2023 (hereafter, "Hearing") [D.E. 17]. For the reasons stated below, the undersigned respectfully recommends that Respondents' Motion to Quash be GRANTED IN PART.

**PROCEDURAL AND FACTUAL BACKGROUND**

On May 23, 2023, Petitioner David Neil Gerrard ("Petitioner" or "Gerrard"), a former partner at the law firm Dechert LLP ("Dechert"), filed a Petition Pursuant to 28 U.S.C. § 1782 ("Section 1782") (hereafter, "Petition") seeking discovery from Koshkin and his company Trident "in aid of proceedings in the United Kingdom (the 'UK') against Gerrard" (hereafter, "the UK Proceedings"). See Petition [D.E. 1 at 1]. Gerrard also submitted a Memorandum of Law in Support of the Petition [D.E. 4]. The Petition described the UK Proceedings as follows:

| | |
|---|---|
| ENRC Matter: | An application for contempt filed against Gerrard by his former client, Eurasian Natural Resources Corporation Limited ("ENRC"). The application alleges that Gerrard perjured himself in an earlier stage of the underlying case ENRC vs. Dechert, Gerrard, and the Director of the Serious Fraud Office ("the SFO"), Claim Nos. CL-2017-000583 and CL-2019-000644. In opposing the ENRC Matter, Gerrard has argued that: (1) ENRC is not a proper person to bring the application for contempt under relevant UK law; and (2) ENRC is pursuing the application for contempt for an improper purpose. |
| Azima Proceeding: | A counterclaim filed against Gerrard and others by Farhad Azima ("Azima") in litigation related to Azima's alleged scheme to defraud the Emirate of Ras Al Khaimah's Investment Authority ("the RAKIA"). |
| Human Rights Proceedings: | Two cases filed against Gerrard and others by Karam Al Sadeq ("Al Sadeq") and Jihad Quzmar ("Quzmar"), respectively, both alleging "serious human rights abuse." |
| Stokoe Proceeding: | A breach of confidence and conspiracy claim filed against Gerrard and others by the Stokoe Partnership ("Stokoe") related to Gerrard's and Dechert's alleged access to Stokoe's confidential banking information.[1] |
| Mikadze Proceeding: | A case filed against Gerrard and others by Gela Mikadze ("Mikadze") related to the RAKIA investigation. |

See Petition [D.E. 1 at 1, 4–6].

In his Petition, Gerrard alleged that

[Koshkin] is currently a corporate consultant and investigator acting as an agent of [ENRC] . . . [and that] Koshkin and Trident, both residents of the Southern District of Florida, have aided ENRC in coordinating litigations against Gerrard for the purposes of exacting revenge against him and/or to compel him to cooperate with ENRC in its continuing disputes with the SFO. Koshkin and Trident accordingly possess evidence, in the forms of communications in which they participated and possibly other materials, that would help demonstrate that ENRC is not a proper party to prosecute the [ENRC Matter] against Gerrard and that ENRC is seeking to prosecute the [ENRC Matter] for an improper purpose. It also appears Koshkin and Trident possess evidence that ENRC is funding the Azima Proceeding[] and at least the Human Rights Proceedings, and potentially the others, in ways that may violate UK law, and which would accordingly support relief for Gerrard in those actions.

---

[1] Stokoe, a London-based firm of solicitors, represents Al Sadeq and Quzmar in the Human Rights Proceedings. See Petition [D.E. 1 at 6].

Id. at 3, 6–7.[2]  Based on these contentions, Gerrard sought leave to serve on Trident a proposed Subpoena to Appear and Testify at a Deposition and to Produce Documents, Information, or Objects (hereafter, "Trident Subpoena") [D.E. 1-2], requesting the following documents:

1. All documents and communications from ENRC, its agents, or representatives concerning Gerrard ("Document Category 1").

2. All documents and communications concerning ENRC's involvement in any proceeding or litigation related to Gerrard ("Document Category 2").

3. All documents and communications reflecting any arrangement between ENRC and [] Azima, or any other party, that in any way relates to Gerrard ("Document Category 3").

4. All documents reflecting or pertaining to Trident's relationship with ENRC and/or Azima ("Document Category 4").

Id.  Additionally, Gerrard sought leave to serve on Koshkin a proposed Subpoena to Appear and Testify at a Deposition and to Produce Documents, Information, or Objects (hereafter, "Koshkin Duces Tecum Subpoena") [D.E. 1-3], requesting production of Document Categories 1–3 from Koshkin.

In support of the Petition, Gerrard filed a declaration from his counsel, Andrew St. Laurent, Esq. (hereafter, "St. Laurent Declaration") [D.E. 1-1].  In turn, the St. Laurent Declaration was supported by the following exhibits:

- ➢ Declaration of Charles Edward Roger Fussell ("Fussell") (hereafter, "Fussell Declaration"), see Ex. A to St. Laurent Declaration [D.E. 1-1 at 3–17];

- ➢ Second Declaration of Nicholas Del Rosso ("Del Rosso") (hereafter, "Del Rosso Declaration"), see Ex. B to St. Laurent Declaration [D.E. 1-1 at 18–42];[3]

---

[2] As to the Azima Proceeding and the Human Rights Proceedings, Gerrard specifically argued that the "evidence would tend to show . . . that ENRC has violated UK law regarding champerty and maintenance". See Petition [D.E. 1 at 3].

[3] At the Hearing, counsel for Gerrard explained that Del Rosso is a defendant alongside Gerrard and Dechert in a case filed by Azima in the Southern District of New York (hereafter, "the New York Case").  See Hearing Tr. [D.E. 18 at 7:11–21].  The Del Rosso Declaration was originally filed under seal in a separate case filed by Azima against Del Rosso and others in the Middle District of North Carolina, namely, Azima

3

> ➢ Declaration of Vikash K. Pandey ("Pandey") (hereafter, "Pandey Declaration"), see Ex. C to St. Laurent Declaration [D.E. 1-1 at 43–78];[4] and

> ➢ A web printout from the Florida Department of State's Division of Corporations confirming that Trident is a Florida LLC, see Ex. D to St. Laurent Declaration [D.E. 1-1 at 79–80].

On May 25, 2023, the Court granted Gerrard's Petition and authorized him to issue and serve the proposed Trident Subpoena and Koshkin Duces Tecum Subpoena (together, "the Subpoenas"). See Order on Petition Pursuant to 28 U.S.C. § 1782 [D.E. 6]. On June 20, 2023, Respondents filed the Motion to Quash [D.E. 11], arguing that: (1) Gerrard had failed to satisfy one of the four requirements set forth in Section 1782 for obtaining the requested discovery; and (2) the discretionary factors articulated in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) weigh against permitting the discovery sought in the Subpoenas. See Motion to Quash [D.E. 11 at 4–8].

On July 5, 2023, Gerrard filed his Memorandum of Law in Opposition to Respondents' Motion to Quash (hereafter, "Response") [D.E. 12]; and on July 11, 2023, Respondents filed their Reply to Gerrard's Response (hereafter, "Reply") [D.E. 15].

## APPLICABLE LAW

To establish a prima facie case of entitlement to judicial assistance under Section 1782:

---

v. Del Rosso et al., Case No. 20-cv-00954, at D.E. 159-8 (M.D.N.C. Feb. 9, 2023). See Petition [D.E. 1 at 7 n.1]. However, counsel for Gerrard explained that the Del Rosso Declaration was eventually obtained from the public docket of a Section 1782 proceeding filed by Al Sadeq and Stokoe in the Middle District of North Carolina, see In re Application of Karam Salah Al Din Awni Al Sadeq et al., Case No. 21-mc-00006, at D.E. 26-8 (M.D.N.C. May 12, 2023) (hereafter, "the North Carolina Section 1782 Proceeding"), and was not necessarily the product of Del Rosso's cooperation with Gerrard in regard to the Petition here or the New York Case. See Petition [D.E. 1 at 7 n.1]; see also Hearing Tr. [D.E. 18 at 11:15–19] ("We— we are co-defendants. And we have had conversations with Del Rosso's counsel. I just want to be careful with the extent that he is cooperating with us[;] we have obtained information that he has publicly filed, [and that] has been the nature of the cooperation to date[.]").

[4] The Pandey Declaration was also filed in the public docket of the North Carolina Section 1782 Proceeding at D.E. 26-6.

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

In re Pons, No. 19-23236-MC, 2020 WL 1860908, at *2 (S.D. Fla. Apr. 13, 2020) (quoting In re Clerici, 481 F.3d 1324, 1331–32 (11th Cir. 2007)).  However, "[e]ven when all four statutory requirements are satisfied, 'a district court is not required to grant a [Section 1782] discovery application simply because it has the authority to do so.'"  In re Ferrer, No. 18-20226-CIV, 2018 WL 3240010, at *3 (S.D. Fla. July 3, 2018) (citing Intel, 542 U.S. at 264).  The Supreme Court in Intel identified the following four factors to aid a court in deciding whether to exercise its Section 1782 authority:

> 1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for [Section 1782] aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; 2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; 3) "whether the [Section 1782] request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and 4) whether the request is otherwise "unduly intrusive or burdensome."

In re Ferrer, 2018 WL 3240010, at *3 (quoting In re Clerici, 481 F.3d at 1334; Intel, 542 U.S. at 264–65).  Respondents argue that Gerrard has not met the third Section 1782 statutory factor, namely, that the documents and testimony requested are "for use" in the UK Proceedings; and that the Intel factors weigh against permitting the discovery sought in the Subpoenas.  See Motion to Quash [D.E. 11 at 4–8].  The undersigned addresses these contentions with respect to each of the UK Proceedings at issue in the Petition.

## THE ENRC MATTER

The undersigned first considers whether Gerrard has satisfied the "for use" statutory factor

5

as to the ENRC Matter and concludes that Gerrard has failed to do so. Given that one of the statutory factors is not met, the undersigned need not analyze the Intel discretionary factors with respect to the ENRC Matter.

Respondents argue that Gerrard fails to satisfy the "for use" requirement as to the ENRC Matter because the High Court of Justice of the Business and Property Courts of England and Wales (hereafter, "the UK High Court") has stayed that proceeding and transferred it to the UK Attorney General for that official to decide whether to prosecute Gerrard for contempt. See Motion to Quash [D.E. 11 at 4]. According to Respondents, given the stay of the ENRC Matter, Gerrard does not have the "practical ability to inject the requested information into the [ENRC Matter]" or "explain how the evidence will be employed with some advantage or serve some use in the contempt proceeding." Id. (quoting In re Bernal, No. 18-21951-MC, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018)). Respondents further argue that, if the UK Attorney General chooses to prosecute the case, it will not have the same motivation that Gerrard ascribes to ENRC for filing the application for contempt, that is, to exact revenge against Gerrard. See Hearing Tr. [D.E. 18 at 45:21–24] ("Counsel: And now, if the Attorney General intends to proceed on [the action], the UK Attorney General has done so independently based on its assessment of the case, not whether ENRC is trying to exact revenge."). Thus, Respondents contend that the UK High Court's stay and transfer of the ENRC Matter to the UK Attorney General has mooted Gerrard's proposed defenses as to the issues of ENRC's standing and motive and Gerrard's need to support those defenses with the requested discovery. Id. at 48:21–49:1 ("The Court: But what you're saying is, this getting converted to something taken over by the UK Attorney General kind of wipes out any participation by ENRC in that contempt portion. So any defense against ENRC becomes moot. I think that's what you're trying to tell me. Counsel: That is what I'm trying to tell you.").

Gerrard counters that Respondents "significantly overstate what is required for a petitioner under § 1782 to demonstrate that the discovery requested is 'for use' in a foreign proceeding." See Response [D.E. 12 at 5].  He argues that "[s]o long as the petitioner 'intends to offer [the discovery] in good faith and argue for its admission,' that is sufficient to satisfy the 'for use' requirement." Id. at 5–6 (quoting In re Bernal, 2018 WL 6620085, at *5).  Moreover, although he does not dispute that the ENRC Matter has been stayed, Gerrard argues that "a foreign court proceeding needs only to be 'contemplated' to qualify under § 1782." See Response [D.E. 12 at 8] (citing Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1269 (11th Cir. 2014)).

However, Respondents reply that a "reasonably contemplated [lawsuit] . . . must be more than speculative, and a court 'must insist on reliable indications of the likelihood that proceedings will be instituted within a *reasonable* time.'"  See Reply [D.E. 15 at 1–2] (emphasis in original) (quoting Application of Consorcio Ecuatoriano, 747 F.3d at 1270).

Here, there is no indication of when the UK High Court might lift its stay of the ENRC Matter, which would only occur if the UK Attorney General declines to prosecute Gerrard. Therefore, "there's no basis on which [the court] can conclude that there is a proceeding that will go forward in which it would be useful . . . to grant this [Petition]. Or, put another way, there is no proceeding in reasonable prospect in which . . . discovery might serve a purpose or might be used, so as to satisfy the threshold requirements of § 1782." financialright GmbH v. Robert Bosch LLC, 294 F. Supp. 3d 721, 731 (E.D. Mich. 2018) (internal quotation marks omitted).  In an effort to justify the continued viability of the Petition, Gerrard contends that the discovery he seeks will be useful as "valid impeachment", even "if [the ENRC Matter is] brought by the Attorney General." See Hearing Tr. [D.E. 18 at 50:23, 51:6].  However, Gerrard's moving of the goal post is

7

unavailing, since he doesn't, and obviously can't, explain how the UK Attorney General would utilize "impeachment" evidence regarding ENRC in prosecuting Gerrard for contempt.

Because Gerrard has not satisfied the "for use" statutory factor with respect to the ENRC Matter, he is not entitled to the discovery he seeks under Section 1782 for purposes of that proceeding. See In re Pons, 2020 WL 1860908, at *2. Given this failure, the undersigned need not conduct any further analysis with respect to the Intel discretionary factors. See In re Ferrer, 2018 WL 3240010, at *3.

## THE AZIMA PROCEEDING

The undersigned next considers whether Gerrard has satisfied the Section 1782 "for use" statutory requirement as to the Azima Proceeding. As discussed below, the undersigned concludes that Gerrard satisfies this third Section 1782 statutory factor with respect to this proceeding; and that the Intel discretionary factors also weigh in favor of permitting the requested discovery.

*1. Whether the requested discovery is "for use" in the Azima Proceeding.*

Respondents argue that Gerrard fails to satisfy the "for use" requirement as to the Azima Proceeding because he does not explain how the evidence will be used to support his argument that ENRC is coordinating and funding this action against him. See Motion to Quash [D.E. 11 at 7].[5] Similar to their ENRC Matter argument, Respondents contend that Gerrard "fails to explain the practical ability to inject the requested information into the [Azima Proceeding] or how it will be employed with some advantage." Id. at 8.

In support of the Petition, Gerrard has proffered several items of evidence consisting of:

➢ The transcript of a June 6, 2020, tape-recorded conversation between Koshkin and Del Rosso, see Koshkin Audio Recording Tr. [D.E. 1-1 at 23–30];

➢ An October 13, 2020, text message exchange between Koshkin and Del Rosso, see

---

[5] As discussed below, Respondents advance this same argument as to the Human Rights Proceedings, the Stokoe Proceeding, and the Mikadze Proceeding. See Motion to Quash [D.E. 11 at 7].

> Koshkin Text Messages [D.E. 1-1 at 36–42];

➢ The Pandey Declaration [D.E. 1-1 at 43–78]; and

➢ The Fussell Declaration [D.E. 1-1 at 3–17].

In his conversation with Del Rosso on June 6, 2020, Koshkin recounted a conversation he had with Dimitri Vozianov ("Vozianov"), a purported agent of ENRC, wherein Vozianov had relayed to Koshkin the following:

> Azima came to them sometime in 2018 and put his position on the table saying that they had common interest in… cornering [Gerrard], explaining that this was his MO, that he made a lot of people unhappy, and that he was prepared to tell them everything that he knew and share all information he had to facilitate their case. So, essentially, it was money in exchange for information . . . . [Vozianov] said I believe we have leverage over Azima. [A]nd [Vozianov] said that we would think we can prevent [Azima] from filing an appeal and from counter-suing. [Vozianov] said it's likely going to cost us some money because [Azima is] going [to] complain that [ENRC is] going to abandon him [but Vozianov said] we'll figure that out.

See Petition [D.E. 1 at 8] (citing Koshkin Audio Recording Tr. [D.E. 1-1 at 27–28]).[6]

Further, in an October 13, 2020, text message exchange between Koshkin and Del Rosso, Koshkin relayed to Del Rosso that he "would be contacted by [Vozianov] [who had the] authority to resolve Azima's anticipated case against Del Rosso[;] and provided a copy of the draft complaint to Del Rosso to show his *bona fides*." See Petition [D.E. 1 at 9] (citing Koshkin Text Messages [D.E. 1-1 at 36–42]).

Finally, in the Pandey Declaration, Pandey details how he was "offered [payment] to assist . . . in Azima's legal proceedings against the [RAKIA], see Pandey Decl. [D.E. 1-1 at 50], which,

---

[6] In the Petition, Gerrard noted that "[t]his relates to the [Azima Proceeding], which was the only litigation involving both Azima and Gerrard that had, at the time of the conversation between Del Rosso and Koshkin in June 2020, reached the appeal stage." See Petition [D.E. 1 at 9 n.2]. Moreover, "[f]ollowing [Azima's] appeal to the Court of Appeal, RAKIA's claim was upheld and [] Azima's counterclaim was remitted to another judge . . . to be re-tried." See Fussell Decl. [D.E. 1-1 at 9]. Gerrard was eventually added as a counterclaim defendant to the Azima Proceeding in 2021; and a trial on the counterclaim is scheduled to commence in May 2024. Id. at 9–10.

9

according to Gerrard, illustrates "ENRC's and possibly Azima's willingness to pay for information and witness statements." See Response [D.E. 12 at 8].

Gerrard has also proffered the Fussell Declaration, wherein Fussell tenders the following expert opinion based on the totality of this evidence:

> While litigation funding arrangements are to some extent permitted in the [UK], they may amount to unlawful maintenance or champerty, if they involve "wanton and officious" meddling, disproportionate control or profit, or a clear tendency to corrupt justice. Certain of the recorded statements by [] Koshkin described in the Petition, including that ENRC has "leverage" over Azima in the Azima Proceeding[], that an unrelated third party had the ability to resolve litigation brought by Azima, and that ENRC had agreed to pay the judgment against Azima in the Azima Proceeding[] raise the possibility that ENRC not only may be funding the Azima Proceeding[], the Human Rights Proceedings[,] and the Stokoe Proceeding[] but may be doing so with disproportionate control over [them], for the purpose of "wanton and officious" meddling (based on [ENRC's] apparent animus against [] Gerrard), and/or with a tendency to corrupt the administration of justice. This may be relevant to [] Gerrard's defence of those proceedings.

See Fussell Decl. [D.E. 1-1 at 14–15]; see also Response [D.E. 12 at 6–7] (same).

Given the foregoing evidentiary proffer, the undersigned concludes that the discovery sought by way of the Subpoenas is relevant to Gerrard's champerty defense in the Azima Proceeding. Moreover, Gerrard contends that the evidence submitted in support of the Petition may only be "the tip of the iceberg"; and that he is "entitled to depose [] Koshkin, ask him questions about his work for ENRC, attempts to gather information against [] Gerrard, efforts to pay witnesses or co-defendants, . . . [and ask] questions about . . . all of the materials [he] submitted". See Hearing Tr. [D.E. 18 at 12:25–13:5, 18:8]. Further, Fussell opines that "[i]n [his] experience, the English Courts have been and remain receptive to admitting evidence obtained under Section 1782 to proceedings in England", see Fussell Decl. [D.E. 1-1 at 15], thereby supporting the requirement that Gerrard have the "practical ability to inject the requested information" into the

10

Azima Proceeding.  See In re Bernal, 2018 WL 6620085, at *4.[7]

Thus, the undersigned concludes that the third Section 1782 statutory factor is satisfied with respect to the Azima Proceeding.

> 2. *Whether the Intel discretionary factors support granting the Motion to Quash as to the Azima Proceeding.*

Respondents further contend that consideration of the Intel factors supports quashing the Subpoenas because "(1) the discovery sought should come from the parties to the UK [P]roceedings, not from third-parties in the United States; (2) the evidence sought is hearsay evidence, and is, therefore, an attempt to avoid proof-gathering restrictions in the UK; and (3) the request is unduly burdensome to a party that has no interest or involvement in the UK."  See Motion to Quash [D.E. 11 at 8].

As to Respondents' first argument, Gerrard responds that the first Intel factor actually weighs in his favor because neither Koshkin nor Trident are participants in the Azima Proceeding. See Response [D.E. 12 at 10].  "[N]onparticipants in [a] foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [Section 1782] aid." See Intel, 542 U.S. at 264.  Here, it is undisputed that Respondents are nonparticipants in the Azima Proceeding; hence, contrary to Respondents' contention, this factor weighs in favor of permitting the requested discovery to proceed.

Respondents' argument with respect to the third Intel factor is that the Petition is a "fishing expedition that seeks irrelevant hearsay evidence that is more appropriately sought in the UK" and that "it is clear that Gerrard seeks hearsay evidence in the United States to avoid the more restrictive procedures in the UK." See Motion to Quash [D.E. 11 at 8].  However, Respondents fail to support these assertions or provide any evidence of the UK's purportedly restrictive

---

[7] As noted below, the Fussell Declaration is unrebutted by Respondents.

evidentiary procedures. By contrast, the Fussell Declaration, which avers, in relevant part, that "[t]he courts in England have declared their willingness to accept evidence obtained through Section 1782 applications", see Fussell Decl. [D.E. 1-1 at 16], remains unrebutted by Respondents. Given Respondents' failure to substantiate their position as to the admissibility of the requested evidence in the UK, this factor likewise weighs in favor of permitting the requested discovery to proceed.

Finally, Respondents contend with respect to the fourth Intel factor that the Subpoenas are unduly burdensome to Koshkin, as he has "no interest or involvement in the [proceedings]." See Motion to Quash [D.E. 11 at 8]. However, Respondents do not elaborate further and wholly fail to identify which discovery requests are unduly burdensome or the nature of the burden. Given the lack of specificity on the part of Respondents, this factor likewise weighs in favor of permitting the requested discovery to proceed for use in the Azima Proceeding. See In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A., No. 20-25212-MC, 2021 WL 2323226, at *9 (S.D. Fla. June 1, 2021) (rejecting "boilerplate arguments" regarding overbreadth and burdensomeness of Section 1782 discovery requests) (citing Application of Consorcio Ecuatoriano, 747 F.3d at 1273).[8]

Therefore, Gerrard is entitled to proceed with its Section 1782 discovery requests for purposes of the Azima Proceeding.

---

[8] Respondents attempt to identify a "temporal disconnect" between Koshkin and Del Rosso's June 6, 2020, conversation on the one hand, and Gerrard's participation in the Azima Proceeding on the other, which commenced in July 2021. According to Respondents, the passage of time begs the question: "How could Koshkin have relevant evidence about ENRC's funding of proceedings against Gerrard that had not yet occurred and would not occur for more than a year after the secret recording?" See Reply [D.E. 15 at 3]. However, the "temporal disconnect" argument is weakened by the fact that the Azima Proceeding was ongoing in 2020. Therefore, the undersigned does not attach to it the weight advocated by Respondents.

## **THE HUMAN RIGHTS, STOKOE, AND MIKADZE PROCEEDINGS**

Finally, the undersigned considers whether Gerrard has satisfied the "for use" statutory factor as to the Human Rights Proceedings, the Stokoe Proceeding, and the Mikadze Proceeding. For the reasons set forth below, the undersigned concludes that Gerrard fails to establish that the documents requested in the Subpoenas are "for use" in these UK Proceedings; and, given this conclusion, finds no need to assess the Intel discretionary factors.

As with the Azima Proceeding, Respondents argue that Gerrard fails to satisfy the "for use" requirement for the Human Rights Proceedings, the Stokoe Proceeding, and the Mikadze Proceeding because he does not explain how the evidence will be used to prove that ENRC is coordinating and funding these actions against him. See Motion to Quash [D.E. 11 at 7]. In the Petition, Gerrard substantially relied on the same evidentiary proffer for the Human Rights Proceedings, the Stokoe Proceeding, and the Mikadze Proceeding as he did for the Azima Proceeding.

Indeed, the Fussell Declaration upon which Gerrard relies merely states without any factual basis that "[i]t is a reasonable inference that a third party with significant resources is funding Messrs Al Sadeq's and Quzmar's costs (plus their liabilities for security for the Defendants' costs) [in the Human Rights Proceedings] and the costs of Stokoe as well. [] Gerrard believes that this third party is ENRC." See Fussell Decl. [D.E. 1-1 at 12]. Moreover, Koshkin's cryptic comment to Del Rosso that ENRC "[would] like to see . . . Al Sadeq released from detention . . . because he's suing [Gerrard]", see Koshkin Audio Recording Tr. [D.E. 1-1 at 28], is equally ineffectual in supporting Gerrard's burden. Finally, Fussell's broad opinion that "the evidence that can be obtained from [] Koshkin and Trident may be relevant and material to the Azima Proceeding[], the Human Rights Proceedings, the Stokoe Proceeding[], and the Mikadze Proceeding", see Fussell

13

Decl. [D.E. 1-1 at 14], is an obvious generalization, devoid of any factual support.  In sum, Gerrard has failed to explain how he will have the "practical ability to inject the requested information into" the Human Rights Proceedings, the Stokoe Proceeding, and the Mikadze Proceeding or "how the evidence will be employed with some advantage or serve some use in [these proceedings]."  See In re Bernal, 2018 WL 6620085, at *4.

Because Gerrard has not satisfied the "for use" statutory factor with respect to the Human Rights Proceedings, the Stokoe Proceeding, and the Mikadze Proceeding, he is not entitled to the discovery he seeks under Section 1782 for purposes of these proceedings.  See In re Pons, 2020 WL 1860908, at *2.  Given this failure, the undersigned need not conduct any further analysis with respect to the Intel discretionary factors.  See In re Ferrer, 2018 WL 3240010, at *3.

### **RECOMMENDATION**

In accordance with the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Respondents' Motion to Quash [D.E. 11] be GRANTED IN PART, as to the ENRC Matter, the Human Rights Proceedings, the Stokoe Proceeding, and the Mikadze Proceeding.[9]  As to the Azima Proceeding, Petitioner may serve on Respondents modified discovery requests to support his anticipated defense that ENRC has violated UK law regarding champerty and maintenance in that case.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance

---

[9] This recommendation is without prejudice to Gerrard filing a renewed Section 1782 petition as to the ENRC Matter should the stay of that case be lifted.

with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers in Miami, Florida, on this 10th day of October, 2023.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


cc: United States District Judge Beth Bloom
     Counsel of Record